IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Yesenia Cortez Ramirez,<br><br>Petitioner,<br><br>vs.<br><br>Warden Angela Rawski,<br><br>Respondent. | ) | C/A No. 0:15-4631-MGL-PJG<br><br>**REPORT AND RECOMMENDATION** |

Petitioner Yesenia Cortez Ramirez, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 10.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Ramirez was advised of the summary judgment and dismissal procedures and the possible consequences if she failed to respond adequately to the respondent's motion. (ECF No. 11.) Having carefully considered the parties' submissions[1] and the

[1]The court notes that Ramirez herself did not file a response to the respondent's motion for summary judgment. Rather, based on correspondence from Ramirez, an individual identified as Mark Marvin filed a response and supplemental filings on her behalf. (ECF Nos. 13, 15, & 16.) It does not appear that Mark Marvin is an attorney, much less licensed in this district. See generally, 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); Brown v. Ortho Diagnositic Sys., Inc., 868 F. Supp. 168, 170 (E.D. Va. Nov. 22, 1994) ("Except in the rarest of circumstances, federal courts have been uniformly hostile to attempts by non-attorneys to represent others in court proceedings."). Accordingly, the court has not considered Marvin's filings, as they were not filed and signed by Ramirez in compliance with the applicable federal rules for *pro se* filers. However, the arguments in Marvin's filings would not have affected the court's decision in this case.





record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Ramirez's Petition denied.

**BACKGROUND**

Ramirez was indicted in May 2010 in Spartanburg County for two counts of accessory before the fact to murder, and one count of accessory before the fact to first-degree burglary (2010-GS-42-3161(A)(B)). (App. at 110-12; ECF No. 9-1 at 114-16.) Ramirez was represented by Doug Brannon, Esquire, and Chris Kennedy, Esquire, and on September 16, 2011 pled guilty as charged. (App. at 1-27, ECF No. 9-1 at 5-31.) The circuit court sentenced Ramirez to fifteen years' imprisonment for each count of accessory before the fact to murder, and fifty years' imprisonment to accessory before the fact to first-degree burglary, all sentences to be served concurrently. (App. at 26, ECF No. 9-1 at 30.) Ramirez did not file a direct appeal.

Ramirez filed a *pro se* application for post-conviction relief ("PCR") on February 3, 2012 in which she raised the following claims, quoted verbatim:

(a) I was not present when these crimes were committed. I was set-up. I was convicted because of guilt by association. I am the only one that has been to trial

(b) Ineffective Counsel

(See Ramirez v. State of South Carolina, 2012-CP-42-675; App. at 28-35, ECF No. 9-1 at 32-39.)

Ramirez filed an amended PCR application in which she alleged the following:

(a) entrapment defense
Implicated by co-conspirators

(b) Nolle pross
Transcitional Immunity

> (c) subject, matter jurisdiction
> Defect And delayed Indiction

(App. at 36-42, ECF No. 9-1 at 40-42) (errors in original). Additionally, Ramirez filed a motion to supplement her PCR application based on after-discovered evidence in which she alleged the following grounds, quoted verbatim:

> Ground (1) Entrapment Defense
>
> Ground (2) Nolle Pross
>
> Ground (3) Subject-Matter Jririsdiction
>
> Ground (4) Discovery Evidence (Meranda Rights
>
> Ground (5) Involuntairy-Unlawful-Guilty Plea
>
> Ground (6) Denied Rights to Appeal Guilty Plea

(App. at 43-48, ECF No. 9-1 at 47-52) (errors in original). The State filed a return. (App. at 49-53, ECF No. 9-1 at 53-57.) On June 28, 2013, the PCR court held an evidentiary hearing at which Ramirez appeared and testified and was represented by Staci Rollins, Esquire. By order filed October 2, 2013, the PCR court denied and dismissed with prejudice Ramirez's PCR application. (App. at 101-09, ECF No. 9-1 at 105-13.)

On appeal, Ramirez was represented by Lara Caudy, Esquire, with the South Carolina Commission on Indigent Defense, who filed a petition for a writ of certiorari that presented the following issue:

> Whether Petitioner's guilty plea was knowingly, intelligently, and voluntarily made where she pled guilty when she lacked a full understanding of the nature of the charges against her and the guilty plea proceeding due to her lack of education and experience with the criminal justice system and her inability to speak English and fully communicate with the court and her attorney, and where she testified that she





> would not have pled guilty if she would have fully understood the charges against her?

(ECF No. 9-4.) On December 10, 2014, the South Carolina Supreme Court issued an order granting Ramirez's petition for a writ of certiorari and directing further briefing. (ECF No. 9-6.) Both parties filed briefs as directed. (ECF Nos. 9-7 & 9-8.) On September 30, 2015, the South Carolina Supreme Court dismissed Ramirez's petition for a writ of certiorari as improvidently granted. (Ramirez v. State, Op. No. 2015-MO-58 (S.C. Sept. 30, 2015); ECF No. 9-9.) The remittitur was issued on October 16, 2015. (ECF No. 9-10.) This action followed.

## FEDERAL HABEAS ISSUES

Ramirez's federal Petition for a writ of habeas corpus raises the following issues:

> **Ground One:** Ineffective Assistance of Counsel
> **Supporting Facts:** English is my secondary language and I wasn't able to understand the facts of the case. My attorney misled me and my family about the plea hearing.
>
> **Ground Two:** Actual Innocence
> **Supporting Facts:** I was set up.

(Pet., ECF No. 1.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible



PJG

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B. Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); Harrington v. Richter, 562 U.S. 86, 100 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also White, 134 S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so





lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington, 562 U.S. at 103). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Harrington, 562 U.S. at 101. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 98 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 102. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C. Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir.





2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D. Respondent's Motion for Summary Judgment**

**1. Ground One**

In Ground One, Ramirez argues her plea was not voluntarily and knowingly entered because trial counsel misled her about the plea process and she was unfamiliar with the English language, which prevented her from understanding the facts of her case.[2]

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S. 362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that plea counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. However, to prevail on a claim of ineffective assistance of counsel in connection with a

[2] This was the claim Ramirez raised throughout the PCR process when she had counsel. This claim was also ruled on by the PCR court. The court notes Ramirez did not use the words "voluntary or knowing" in her grounds for relief in the Petition, but considering Ramirez's claim that English is her second language and her *pro se* status, the court construes this claim to comport with the issue she has raised throughout these collateral proceedings. To the extent Ramirez seeks to raise a claim that trial counsel was ineffective that is separate and distinct from a claim that her plea was involuntary, such a claim would be procedurally barred from federal habeas review because it was not raised to and ruled on by the state courts. See Lawrence, 517 F.3d at 714.





guilty plea, the Strickland test is "some what different." Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000). To establish the prejudice prong of the Strickland test, a habeas petitioner who pled guilty must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)) (discussing the Strickland v. Washington standard to establish ineffectiveness of counsel in the context of a guilty plea).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 562 U.S. at 105. The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

The Supreme Court has held that a decision containing a reasoned explanation is not required from the state court. As stated above, if no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. In the case at bar, this court has the benefit of the PCR court's written order dismissing Ramirez's PCR application, certiorari review of which was dismissed as improvidently granted by



PJG

the South Carolina Supreme Court. Therefore, the court turns to the question of whether the PCR court's order unreasonably misapplied federal law or was based on an unreasonable determination of the facts. Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland/Hill test in determining that no Sixth Amendment violation occurred.

At the PCR hearing, Ramirez testified that while plea counsel and the interpreter met with her prior to the plea hearing, they did not explain to her what was going to happen at the plea hearing, and plea counsel did not say or read anything to her in Spanish, her primary language. (App. at 68, ECF No. 9-1 at 72.) Ramirez stated that plea counsel told her through the interpreter that she would likely get a life sentence whether she pled guilty or went to trial. (Id.) She testified she decided to plead guilty because plea counsel told her he would "explain everything" after the hearing. (Id.) She further testified that she thought plea counsel was going to explain to the plea court that she was not at the location of the murder and that she had nothing to do with it. (App. at 71, ECF No. 9-1 at 75.)[3]

Ramirez testified she had an interpreter during the plea hearing, but she did know how to answer the plea court's questions. (App. at 67, ECF No. 9-1 at 71.) She testified that she asked the interpreter and plea counsel how she should answer the plea court's questions, and they told her to say "yes" to everything asked of her. (Id.) When asked whether she understood the plea court's questions, she testified that she was taking medication for her depression at the time and was in a

[3] Somewhat in contradiction, she later testified that when she told plea counsel she was not guilty of the charges against her, plea counsel told her that she would not be in jail and she would not be in this situation if she was not guilty. (App. at 72, ECF No. 9-1 at 76.) She testified he then told her to plead guilty. (Id.)





"bad state." (App. at 69, ECF No. 9-1 at 73.) She also testified that plea counsel told her that he would take her to get her medication, but he never did. (Id.) She testified that after the plea hearing, plea counsel met with her to tell her that she received a fifty-year sentence and she never heard from him again. (Id.) She testified that she was not aware of her charges until she entered prison, and she would have never pled guilty had she understood the charges because she was not guilty. (App. at 75, 77-78; ECF No. 9-1 at 79, 81-82.)

Plea counsel testified he never talked to Ramirez without an interpreter, and he believed she understood the charges and the possible sentences she was facing. (App. at 86, 92; ECF No. 9-1 at 90, 96.) He also testified that he explained to her the plea process, including the particularities of Judge Hayes, the plea judge, whom he had handled guilty pleas in front of several times. (App. at 88, ECF No. 9-1 at 92.) He testified he had no concerns that she pled intelligently and voluntarily. (App. at 90, ECF No. 9-1 at 94.) Plea counsel further testified that Ramirez always wanted to proceed to trial until they began talking about trial strategies. (App. at 86, ECF No. 9-1 at 90.) He testified that Ramirez wanted him to explain to the jury that in her religion, she was a witch. (Id.) Plea counsel testified he warned her that calling her a witch in front of the jury would not be favorable, and suggested that he instead refer to her as a preacher. (Id.) He stated that Ramirez refused to be called anything other than a witch, and then she suddenly decided that she wanted to plead guilty because, otherwise, she would be cursed for being involved in someone's death. (App. at 86, 91; ECF No. 9-1 at 90, 95.) Finally, plea counsel testified that Ramirez never told him that she needed medication, including at the plea hearing. (App. at 96, ECF No. 9-1 at 100.)

The PCR court found Ramirez failed to meet her burden of proof to show that her plea was not entered knowingly and voluntarily. The PCR court found Ramirez's testimony on this issue was





incredible, while finding trial counsel's testimony credible. The court found Ramirez was able to communicate with an interpreter at the PCR hearing, and the plea transcript showed the same was true when she pled guilty. The court found Ramirez "responded to the [plea] court's questions appropriately and indicated a full understanding of the plea process and of the charges that she was pleading guilty to." (App. at 106, ECF No. 9-1 at 110.) The court further found that Ramirez was not prejudiced because she failed to show that, but for plea counsel's purported deficiencies, she would have insisted on going to trial rather than plead guilty.

The court finds the PCR court's decision is not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts. Ramirez failed to show that she did not understand the plea process. First, the court presumes that her guilty plea represents the truth. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("[The] representations of the defendant, [her] lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); Christian v. Ballard, 792 F.3d 427, 444 (4th Cir. 2015) (citing Blackledge). Ramirez failed to present anything other than conclusory allegations that she did not understand plea process.[4] Second, plea counsel's testimony expressly refuted those conclusory allegations, and the PCR court found his testimony to be credible, while

[4] As part of the plea colloquy, Ramirez stated that she was informed by plea counsel of the legal elements of the charges she faced and possible defenses to those charges, and the decision to plead guilty was free and voluntary. The plea court advised her of the rights she was waiving by pleading guilty and advised her of the sentences she faced for each charge. (App. at 5-13, ECF No. 9-1 at 9-17.)





finding Ramirez's testimony to be incredible. See Elmore v. Ozmint, 661 F.3d 783, 850 (4th Cir. 2011) ("We must be 'especially' deferential to the state PCR court's findings on witness credibility, and we will not overturn the court's credibility judgments unless its error is 'stark and clear.' ") (quoting Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010)). Finally, the record supports the PCR court's finding that Ramirez was able to communicate effectively at the plea hearing and PCR hearing, which tends to show that her deficiencies as an English speaker were not a barrier to her understanding of the plea process, and Ramirez has not produced any evidence to refute that finding other than her own self-serving testimony. See § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Ramirez also failed to show she was prejudiced under the Strickland and Hill frameworks because she did not present any credible evidence that she would have gone to trial but for plea counsel's errors. See Burket, 208 F.3d at 189. Again, plea counsel's testimony directly refuted Ramirez's claim that she pled guilty because plea counsel told her to or because she was ignorant of the plea process. Plea counsel's testimony, which the PCR court found to be credible, as opposed to Ramirez's testimony, see Elmore, 661 F.3d at 850, showed that Ramirez pled guilty because she felt she would be cursed if she was associated with someone's death, and that her decision was made after she expressed reservations about proceeding to trial. Plea counsel's testimony also shows that Ramirez's decision to plead guilty was made after plea counsel had fully advised her of the charges and sentences she faced, the plea process, and her options at trial. Therefore, based on the record,





the PCR court reasonably found that Ramirez was not prejudiced because she failed to prove that she would have insisted on going to trial rather than plead guilty. See § 2254(e)(1). Accordingly, the court finds the PCR court's decision is not contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts.

**2. Ground Two**

In Ground Two of the Petition, Ramirez asserts a freestanding claim of actual innocence, specifically alleging that she was "set up." "Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief." Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006) (citations omitted). But, "the Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief: 'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.' " Id. (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)). The court observes that some cases suggesting that it may be unsettled whether a freestanding claim may exist also suggest that the existence of such a claim may be limited to capital cases. See Hunt v. McDade, 2000 WL 219755, at *2 (4th Cir. 2000) (Table) ("The Herrera Court's analytical assumptions recognizing the possibility of a persuasive freestanding claim of actual innocence may be limited to capital cases because those assumptions were made in the context of evaluating the constitutionality of the petitioner's execution.) (citing Herrera, 506 U.S. at 417; id. at 427 (O'Connor, J., concurring); id. at 429 (White, J., concurring in the judgment)).

Nevertheless, even "if free-standing actual innocence claims were cognizable on federal habeas review, 'the threshold showing for such an assumed right would necessarily be





extraordinarily high.' " Buckner, 453 F.3d at 199 (quoting Herrera, 506 U.S. at 417).[5] Ramirez, however, does not assert any argument or offer any evidence that would tend to show that she is actually innocent or that she can overcome the presumption of verity in her guilty plea. She only states in conclusory terms that she was "set up." Upon a thorough review of the record in this matter and specifically considering Ramirez's guilty plea and the evidence presented at the PCR hearing, the court finds that Ramirez cannot even meet the standard of proof by which gateway innocence claims are measured as she cannot demonstrate that "based on proffered newly discovered evidence and the entire record before the jury that convicted [her], 'no rational trier of fact could [find] proof of guilt beyond a reasonable doubt.' " Hunt, 2000 WL 219755, at *2 (quoting Herrera, 506 U.S. at 429 (White, J., concurring)).

**RECOMMENDATION**

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment be granted (ECF No. 10) and Ramirez's Petition be denied.

July 20, 2016
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

[5] The court also notes the level of finality and presumption of truth accorded to guilty plea proceedings during federal habeas review. See Blackledge, 431 U.S. at 74.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).